1

**STACI BURK**
2487 S. GILBERT RD. #106-609
2
Gilbert, Arizona 85295
3  (480) 343-4518
staci@asu.edu
4  Representing Self

☑ FILED _____ LODGED
_____ RECEIVED _____ COPY

APR 2 8 2021

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

5

6

7

8                    UNITED STATES DISTRICT COURT OF ARIZONA

9

10

11

12

13   **STACI BURK,** representing herself,                    **CV21-00757-PHX-SPL**

14

15   **vs.**

16

17   **ARIZONA DEMOCRATIC PARTY,** an
     Arizona political party and political action        **EXPARTE REQUEST FOR**
18   committee; and **STEVE GALLARDO,** in              **EMERGENCY INJUNCTIVE**
     his official capacity, Plaintiffs, **KAREN**         **RELIEF AND TEMPORARY**
19   **FANN,** in her official capacity as President      **RESTRAINING ORDER**
     of the Arizona Senate; **WARREN**
20   **PETERSEN,** in his official capacity as
     Chairman of the Senate Judiciary
21   Committee; **KEN BENNETT,** in his
     official capacity as the liaison of the
22   Arizona Senate; and **CYBER NINJAS,**
     **INC.,** a Florida corporation, Defendants.
23

24
THIS DOCUMENT IS <u>NOT</u> IN PROPER FORM ACCORDING
TO FEDERAL AND/OR LOCAL RULES AND PRACTICES
AND IS SUBJECT TO REJECTION BY THE COURT.

REFERENCE ___LRCiv P 5.4___
            (Rule Number/Section)
25

26

27

28

Pursuant to Fed. R. Civ. Proc. 65(b) Petitioner Staci Burk respectfully requests this Court grant an emergency temporary restraining order to stop Respondents Karen Fann, Warren Petersen, Ken Bennett, and CyberNinjas from engaging in active and ongoing spoliation of evidence in violation of 18 U.S. Code § 1519 and Respondent Gallardo from engaging in the ongoing shredding and destruction of 2020 election material in violation of 52 U.S.C. §20701 subject to proceeding currently pending before the United States Supreme Court in Case No. 20-1243 *Burk v. Ducey, et al*

## JURISDICTION AND VENUE

Petitioner is an Arizona resident and this matter involves alleged ongoing violations of Federal Law related to a pending matter before the United States Supreme Court.

All Respondents are either organizations and or officials conducting business in Arizona.

Thus, this Court has subject matter jurisdiction and it is the appropriate venue.

## MEMORANDUM

On December 7, 2020, Petitioner Staci Burk filed an election contest in Pinal County Superior Court under A.R.S. 16-672 contesting the 2020 election and seeking access to the paper ballots under A.R.S. 16-677 to conduct a forensic examination for fingerprint evidence. In this action Burk also filed claims of minority related vote denial and voter suppression. In short her Fourteenth Amendment claim was that she was illegally denied her right to vote because her registration was illegally cancelled, while ineligible ballots were counted.

Ignoring her Constitutional claims of Equal Protection and vote denial appropriately pled in her complaint, the Pinal County Court denied her election contest claim without a hearing in pretrial dismissal on the grounds she did not vote in the 2020 election. Also ignoring her Constitutional claim of vote denial properly pled in her opening brief, the Arizona Supreme Court

- 2 -

denied her claim on the grounds that the Courts are not the proper way to register to vote and that she did not file a timely complaint verification along with her complaint on December 7, 2020. At the filing counter on December 7, 2020, Burk presented a timely verification and summons with her complaint and these forms were rejected at the filing counter by the clerk. The Pinal County court administration openly admits this mistake and and has stated that they were not used to election challenge cases and should not have rejected those documents on December 7, 2020. Burk filed an amended complaint on December 8, 2020 with the proper verification and summons.

On March 3, 2020, Burk filed a Petition for Certiorari with the United States Supreme Court. The U.S. Supreme Court scheduled her case for discussion and hearing at the Conference to be held April 30, 2021. Case No. 20-1243 *Burk v. Ducey, et al*

On January 12, 2021 President Fann and Chairman Petersen jointly issued pursuant to A.R.S. § 41-1151 subpoenas duces tecum to the Maricopa County Board of Supervisors, the Maricopa County Recorder and the Maricopa County Treasurer, seeking access to, or the production of, documents, information and materials relating to the casting and tabulation of ballots in connection with the November 3, 2020 general election, including vote tabulation devices and original hard copies of all ballots cast in the election. Maricopa County contested the validity of the subpoenas and the Superior Court ruled on February 25, 2021 that the subpoenas were "legal and enforceable." Maricopa County v. Fann, Maricopa County Superior Court No. 2020-016840, Minute Entry dated Feb. 25, 2021. Declining to appeal, the County thereupon complied with the subpoenas and the audit commenced on April 22, 2021. The Senate President appointed former Secretary of State Ken Bennett to oversee the audit on the Senate's behalf. On the afternoon of April 22 —the Arizona Democratic Party and Maricopa County Supervisor Steve Gallardo, acting

in his personal capacity— filed suit in the Superior Court and sought a temporary restraining order suspending the audit.

Petitioner filed a Motion to Intervene in that action alleging she had been trying to gain access to the ballots at issue since filing her election contest on December 7, 2020, and that case is now at the United States Supreme Court. Burk asserted the way the audit was being conducted was actually destroying the evidence she sought in her U.S. Supreme Court case. The spoliation of evidence is being done by auditors having multiple volunteers handle the ballots and contaminate any forensic fingerprint analysis Petitioner intended to conduct should her case prevail, and she gain ballot access under A.R.S. 16-677.

During the hearing on April 27, 2021, at the point in the hearing when the Court began discussing Petitioners Motion to Intervene, a computer glitch dropped Petitioner from the hearing. The Court allowed all lawyers to present arguments in opposition to Petitioners Intervening request while the Court and lawyers knew or should have known Petitioner was not present because the zoom screen showed Petitioner was in the virtual "waiting room" on everyone's computer screens. (see Ex A for screen display) https://www.ntd.com/live-arizona-maricopa-county-election-audit-hearing_603970.html?fbclid=IwAR3k_nQQT2j9nkQv6hVEsWtOgeMmnsp23NPmcTRkw-7DYksoHAt4SVi7NyA

While Petitioner was excluded from the hearing, attorney for the audit firm Cyber Ninjas Alexander Kolodin was allowed to present false information that the Attorney Generals office had investigated the issue and found no evidence. That is false. Kolodin knew Petitioner was pursing her case and it was not investigated as she had spoken with him and was listed as a witness in the election challenge lawsuit he filed on behalf of Sidney Powell which was dismissed. Kolodin knew or should have known it was not until just recently the Attorney General's office began

looking into Petitioners allegations for the first time after pressure. The AG's office has delayed its investigation because Petitioner has been in the hospital, even though Petitioner requested they move forward investigating even with her hospitalization (Ex B, recent emails with AG's office).

Thus, at this time ***no law enforcement agency or Court has yet investigated Petitioners allegations and evidence.*** Petitioner is actively trying to stop the spoliation of evidence so that a legitimate investigation can be done. Especially given their own active and pending investigation, Petitioner requested the Arizona Attorney General also stop the destruction of evidence and discuss pursing an investigation. (Ex C). Their office has taken no action to halt the audit.

The Alaska Department of Elections has used this same type of forensic fingerprint analysis in a ballot fraud investigation.

https://www.americanthinker.com/blog/2020/11/can_fraudulent_ballots_be_identified_.html

In this analysis once election staff are excluded, latent fingerprint analysis is used to detect patterns of the same individual or a few individuals handing a large batch of ballots provides evidence of fraud.

With the Koch confession and evidence in Petitioners U.S. Supreme Court case, this type of forensic analysis can prove election fraud should she prevail in her current pending case.

An emergency exists because between now and April 30, 2021, Respondents are continuing to engage in the active spoliation of the ballots via the audit. Thus, Petitioner seeks this emergency exparte temporary restraining order to halt the spoliation of evidence at issue in an ongoing Federal proceeding. Petitioner does not want to stop a legitimate audit. In fact, she wants a legitimate audit. She only seeks to halt spoliation and destruction of evidence through an illegitimate audit.

In open Court, Respondent Counsel and Judge Martin reiterated the Senate audit has no connection to the 2020 election along with plans of the Senate to sine die next week before the

audit is completed, there is no reason a temporary restraining order issued by this Court would prejudice Respondents when weighed against spoliation of evidence in the current pending Federal action. In fact, it is prudent to halt the effort pending the SCOTUS decision at Conference, or at least act to halt the spoliation of evidence.

## BACKGROUND AND SERIOUSNESS OF EVIDENCE AT ISSUE

Burk filed her election contest when she sought to report very serious election violation allegations to law enforcement and members of the Senate. On November 25, 2020, before certification of the election, Burk sent Senate Judiciary Chair Defendant Petersen an audio recorded confession of a man who confessed to taking illegal ballots from a foreign plane and into the Maricopa County Election Center. According to the confession, those ballots did influence the 2020 election in favor of Biden. (Ex. D). In a follow up call in early December 2020, Burk spoke with Defendant Petersen requesting Senate intervention. Petersen told Burk the Legislature does not have the ability to hear fraud cases and take testimony, that is for the Courts. Burk also spoke with other Senate Republicans who also stated there was nothing that could be done.

In the record before the U.S. Supreme Court is the transcript excerpt presented in the lower courts of an audio recorded confession from a man named Scott Koch confessing to the crime of transporting illegal ballots. According to his associate Shawn Wilson, Koch is former law enforcement deputy having Department of Defense security clearance for the Sky Harbor and Williams Gateway tarmac access. Due to unique circumstances believing Burk already had video evidence of his illegal activities on the airstrip, Koch sought out Burk and while Burk secretly recorded using her iPhone, Koch confessed that he and "his guys," removed fraudulent ballots favoring Biden from a plane and took them to the Maricopa County Election Center. (Transcript

of confession excerpt Ex. D). An affidavit of an eyewitness corroborates Koch's story placing he and his associate Shawn Wilson, behind the secure line at the ballot tabulation center while ballots were being tabulated. (Ex. E).

Under A.R.S. § Rules of Evid., Rule 804(b), the following statements are excluded by the rule against hearsay if the declarant is unavailable as a witness: (3) Statement Against Interest. A statement that: (A) a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability; and (B) is supported by corroborating circumstances that clearly indicate its trustworthiness, if it is offered in a criminal case as one that tends to expose the declarant to criminal liability. Even if Koch is unavailable to testify, Koch's audio recorded confession is admissible to prove the truth of the matter asserted under Rule 804(b)(3)(A). It is would also be admissible in a criminal case under Rule 804(b)(3)(B), since there is a corroborating eyewitness who provided an affidavit and is willing to testify. (Ex. E)

Petitioner also reported these allegations to the local police, Pinal County Sheriff Mark Lamb, as well as Arizona Attorney General's Office in early November. Burk did not receive a response from the Arizona Attorney General's Office until March 30, 2021.

In November 2020, Petitioner reached out to Congressman Andy Biggs. Biggs sent Petitioner to Kory Langhoefer, who put her in touch with Trump team lawyers. Burk was contacted by Sidney Powell and Mike Flynn, who sent a security team to her home for several weeks. When Petitioner was contacted by the FBI, Sidney Powell's assistant told Petitioner that Powell did not want Petitioner to speak with the FBI, that she would have her lawyers intervene. Instead, Powell

sent retired FBI agents Ruben Iglesias and Tonya Coleman to Petitioners home to interview her. That interview was recorded but nothing was ever done.

At the direction of Jim Penrose, personal assistant to Mike Flynn and former Director at the National Security Agency, members of the security team were told to steal Petitioners iPhone which contained the Koch confession and other recordings including a recording of Penrose. Petitioner's flash drives were also stolen. Petitioner had secured backups of all stolen recordings and data. On January 11, 2021, Former Homicide Detective Geoffrey Flohr who was providing personal security detail for Mike Flynn at the time, told Burk that her phone had turn up in a bag at the Willard Hotel in D.C. Flohr sent a picture of it and said he would get to the bottom of the theft of her phone. Geoffrey Flohr told Petitioner her life was at risk if she continued to talk about the plane and Koch confession. Flohr is willing to testify. (Ex F).

**ARGUMENT**

Pursuant to Federal R. Civ. Proc. 65(b), this Court may issue a temporary restraining order without notice if; (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

**USE OF GLOVES RESTRICTED IN AUDIT CONTRACT**

Petitioner will suffer irreparable harm if the audit is allowed to continue without safeguard in place to protect evidence from destruction. On April 22, 2021, Petitioner emailed Senate Attorney Kory Langhoefer regarding the spoliation of evidence and her SCOTUS case (which he was aware of). Langhoefer replied that he would have the audit team wear gloves. (Ex G).

Petitioner later received a message from Josh Barnett who has been working directly with the audit team and told Petitioner that the contract with the audit company excludes the use of gloves during the audit and to use gloves would breach the contract. (Ex H). Petitioner initially believed that even with gloves the fingerprint evidence would be spoiled. However, after consulting with a forensic expert Petitioner has learned that glove use is one measure that could be put in place to protect the ballots from spoliation for her case, which would allow the audit to go forward without spoliation.

On April 24, 2021, Petitioner emailed Senate Counsel inquiring if they were actually wearing gloves. (Ex. H). On April 26, 2021, auditors were observed handling ballots without gloves. Petitioner sent a second request to Counsel informing him the auditors are not wearing gloves. Despite Petitioners request for gloves and intervention to prevent spoliation, the audit is continuing without the use of gloves or any other efforts to protect the ballots for Petitioners pending Federal case. This can be viewed on the livestream cameras at https://azaudit.org/  All of the Respondents Counsel knew of Petitioners pending case and evidence prior to the negotiation of the contract to prohibit the use of gloves during the audit.

Pursuant to 18 U.S. Code § 1519 Destruction, alteration, or falsification of records in Federal investigations; "Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or *proper administration of any matter within the jurisdiction of any department or agency of the United States* or any case filed under title 11, or in relation to or contemplation of any such matter or case, shall be fined under this title, imprisoned not more than 20 years, or both.

The 2020 election ballots being handled and spoiled during the audit without safeguards in place directly interferes with the proper administration of justice in Petitioners U.S. Supreme Court case. Petitioner is not working on behalf of anyone and has personally spent $15,000 in costs and six months of significant time and effort to the detriment of her law school GPA (for which she was in the top 15% of her class prior to her election contest case) pursing her request for relief and getting to the truth. Petitioner has also gone into personal debt doing so. If the audit is allowed to continue as it is currently being conducted without safeguards in place, Petitioner will suffer direct and irreparable harm. Petitioner did not request monetary relief in her election challenge or U.S.C. §1983 claim for vote denial and vote suppression. She simply asked as a remedy for access to the ballots under A.R.S. 16-677 and a Court hearing and intervention to get to the truth. By spoiling the evidence and ensuring that even if the SCOTUS were to remand the case and she obtained relief, the evidence would be spoiled by the Respondents current active effort resulting in irreparable harm.

**RESPONDENTS HAVE ENGAGED IN ACTIVE SPOILATION AND ARE CONTINUING TO DO SO IN VIOLATION OF FEDERAL LAW COLLECTIVELY AND ACTIVELY REQUIRING PROMPT EMERGENCY INTERVENTION**

**a. Respondent Gallardo and the Board of Supervisors are responsible for the Maricopa County Election Center and while the audit and Petitioners case have been pending, active destruction of 2020 election related documents has been taking place.**

Respondent Gallardo, along with his colleagues are responsible for oversight of the staff at the Maricopa County Election Center. He is also a named Defendant in Burk's SCOTUS case.

On March 5, 2021, at approximately 10:45a video camera footage from the election center shows a County employee tossing a yellow DHL bag of shredded material into the dumpster. (Ex. ____, still shot of video).

On March 5, 2021, shortly after hand delivering her U.S. Supreme Court case documents to the attorneys representing the Arizona Democrat Party in the action trying to stop the audit (also representing Defendant Hobbs in Petitioner's Supreme Court case), she went by the Election Center. Burk noticed the warehouse door open with pallets of what appeared to be unsupervised ballots. The pallets appeared similar to the photo Plaintiff Gallardo's colleague Supervisor Jack Sellers provided to the Senate the day before, which was published in the newspaper. During the March 5, 2021 visit, Burk took photos of the warehouse from the open, unrestricted, public access area, which captured the blue dumpsters. Burk did not look inside the dumpsters at that time. (Ex. I, letter photo from Sellers and photos taken by Burk).

When Burk showed Earl Shafer her pictures he told her the election center staff which Plaintiff Steve Gallardo and the other Board of Supervisors oversee, were likely destroying documents and evidence.

The following day on March 6, 2021, Burk returned with Earl Shafer to the unrestricted, open, public access area. Burk found the yellow bag in the dumpster which had been discarded. Shafer retrieved the bag from the dumpster. Shafer and Burk later examined the contents. Shafer prepared a white board displaying what appear to be 2020 General Election ballots. Burk took photographs and shared the photos. The yellow bag also contains documents which appear to be

completed voter registration forms, logs, original birth and death certificates with raised embossing, among other documents. (Ex. J, photos).

Federal law 52 U.S.C. §20701 requires, "Every officer of election shall retain and preserve, for a period of twenty-two months from the date of any general, special, or primary election of which candidates for the office of President, Vice President, presidential elector. . .*all records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election, except that, when required by law, such records and papers may be delivered to another officer of election. . .* Any officer of election or custodian who willfully fails to comply with this section shall be fined not more than $1,000 or imprisoned not more than one year, or both. ( Pub. L. 86–449, title III, §301, May 6, 1960, 74 Stat. 88 .)"

Shafer and Burk then gave the yellow bag to Daryl Colvin who then mailed the contents to former Marine Officer James Curtis for safekeeping. Curtis was on the phone with Shafer and Burk as they drove to the Election Center, when the bag was found and on the way home after it was retrieved. Curtis has managed property on behalf of the U.S. Government and conducted investigations in his role as both a Marine Officer and Contractor for 20 years. Burk proffered the shredded bag to the U.S. Supreme Court for constructive possession with James Curtis retaining actual possession on behalf of the Courts until a final decision from all Courts in Burks case have been rendered.

**b. Respondent Senators Petersen Knew of Petitioners Evidence Since November and Still Actively Engaged in Negotiating a Contract with CyberNinjas Which He Knew or Should Have Known Would Engage in the Active Spoilation of Petitioners evidence.**

Respondent Warren Petersen refused to investigate Petitioner's election fraud allegations in December 2020. The audio recorded confession of Koch admitting to taking fraudulent ballots into the Maricopa County election center was sent to Defendant Warren Petersen via text message (prior to the certification of the election) on November 25, 2020 at 10:45am. (Ex. K). In a phone conversation at that time he told Petitioner that the Senate could not intervene because handling election fraud matters were "best left to the Courts."

Koch alleged that the plane used to transport the illegal ballots was in a hangar at Sky Harbor at the time he confessed. House Speaker Rusty Bowers told Burk that particular hanger is overseen and supervised by House Representative Travis Grantham. Bowers told Burk that Grantham signs off on all planes at that facility. Travis Grantham is a close associate and prior political running mate of Defendant Warren Petersen. Grantham has ignored Petitioner's request to discuss the plane.

On a phone call recorded by another individual who was also on the call, Arizona Senate Republican Majority Whip Sonny Borelli told Petitioner Burk that they would not be doing the audit if it weren't for him. He said the Arizona Attorney General's Office was uninterested in investigating election fraud and the ballots would evaporate if she gave them to them. https://www.azmirror.com/2021/03/11/top-gop-senator-shredded-ballots-will-evaporate-if-given-to-the-ag/

Senator Borelli told Intervenor Burk that if the high-level individuals involved in the election fraud got to her first she would be killed, and she should give the shredded ballots to him. He told her she should trust no one. Borelli told Petitioner, "This is the domino. This is the one domino Arizona knocks over and we expose this corruption then the other states fall, too. . .This is so high level, people, that they want this to go away. . .They can try to silence you, you're a private citizen. They can't do anything to me. They can bully me all they want but they know they can't

take me out ...[unless] they whack me or I have a suicide."

https://www.azcentral.com/story/opinion/op-ed/laurieroberts/2021/03/11/arizona-senator-says-ag-cant-trust-shredded-ballots/4654862001/

**c. Koch Alleged During His Confession To Direct Participation in the Election Fraud that Both Sides Are Working Together**

During the recorded confession, Burk asked Koch who was ultimately responsible for the election rigging and why didn't he blow the whistle. Koch said he worked either directly for and involved with County, State, and Federal agencies. He said those responsible for the "election rigging" were "factions" within the government, but ultimately several international families with "money and power" were controlling the operation at the top. He told Burk he was a member of the Koch family and the families involved had more money and power than his family. He said he did not blow the whistle because those involved were too powerful than anyone can stop. Burk told Koch she thought God could stop it. Koch said he did not believe in God.

Burk was also aware two weeks in advance that the vote which would not hold Maricopa County Board of Supervisors was engineered behind the scenes and confronted Borrelli about this during their recorded call. Jeremy Duda from the Arizona Mirror posted the recorded conversation and reported, "Borelli eventually hung up on the women after Burk alleged that a failed, 15-15 vote in the Senate to hold the supervisors in contempt for defying the subpoenas was actually engineered in a secret meeting held by GOP senators."

https://www.azmirror.com/2021/03/11/top-gop-senator-shredded-ballots-will-evaporate-if-given-to-the-ag/

While it appears that the parties are at odds in the case to stop the audit, Koch asserted in his confession that those involved with the fraud and cover up are working together behind the scenes to defraud the general public. Respondents and Counsel interactions with Burk suggest at least

- 14 -

some validity to Koch's statements. Additionally, in Majority Whip Sonny Borelli's statement directly to Petitioner that "high level" people are behind the fraud and want to see the whole thing "go away," also offers some insight and motive behind the actions of individuals involved.

Thus, Petitioner has gone above and beyond spending thousands of dollars of her own money and time representing only the truth. Respondents and their Counsel individually and collectively in part have been on actual, constructive, and inquiry notice since prior to even the certification of the 2020 election in Arizona. Their actions demonstrate an intentional effort to engage in the active destruction and spoliation of evidence. Petitioner also asserts the Maricopa County Superior Court engaged in a procedural due process violation by allowing Respondents to present their arguments including false representations opposing Petitioners position, rights, and interests without allowing her presence during such argument, then denied her motion to intervene to protect those rights. The actions by Government actors as described above have shattered Petitioner's faith in the system and government as she understood it prior to this experience.

## CONCLUSION

WHEREFORE, Petitioner respectfully requests that this Court enter an emergency exparte order;

1. Enjoining Respondents to temporarily halt the audit which is occurring in violation of Federal anti-spoliation laws.

2. A bond should not be required as Respondents knew or should have known that the way the proposed audit was structured would result in the spoliation of ballot access she sought

under A.R.S. 16-677 in her case currently pending before the United States Supreme Court.

3. Set this matter for a Show Cause Hearing to proceed with the audit in a manner that does not engage in spoliation.

I, Staci Burk, hereby declare under penalty of perjury that the above is true and correct to the best of my knowledge.


Respectfully submitted this 27th day of April, 2021.


_____

By Staci Burk

Staci Burk
2487 S. Gilbert #106-609
Gilbert, Arizona 85295
(480) 343-4518

**ORIGINAL FILED** and **EFILED via TURBOCOURT** to the Maricopa County Superior Court this 27th day of April, 2021;

DISTRICT COURT OF ARIZONA
401 W. Washington St., Suite 130
Phoenix, AZ 85003-2118
602-322-7200

**COPIES** of the foregoing **MAILED/ESERVED** this 27th day of April, 2021;

Roopali H. Desai (ASB# 024295)
D. Andrew Gaona (ASB# 028414)
Kristen Yost (ASB# 034052)
rdesai@cblawyers.com
agaona@cblawyers.com

COPPERSMITH BROCKELMAN PLC
2800 North Central Avenue, Suite 1900
Phoenix, Arizona 85004
Telephone (602) 381-5478

James E. Barton II (ASB# 023888)
Jacqueline Mendez Soto (ASB# 022597)
BARTON MENDEZ SOTO PLLC
401 W. Baseline Road, Suite 205
Tempe, Arizona 85253
Telephone (480) 550-5165
james@bartonmendezsoto.com
jacqueline@bartonmendezsoto.com

*Attorneys for Plaintiffs Arizona Democratic Party and Supervisor Steve Gallardo*

Thomas Basile (ASB#   )
STATECRAFT LAW PLLC
649 N. Fourth Avenue, Suite B
Phoenix, Arizona 85003
Telephone (602) 362-0036
tom@statecraftlaw.com

Kory Langhoefer (ASB#   )
STATECRAFT LAW PLLC
649 N. Fourth Avenue, Suite B
Phoenix, Arizona 85003
Telephone (602) 362-0036
kory@statecraftlaw.com

*Attorneys for Karen Fann, Warren Petersen, and Ken* Bennett

Alexander Kolodin (ASB#        )
3443 North Central Ave, Suite 1009
Phoenix, Arizona   85012
Telephone:  (602) 730-2985
alexander.kolodin@kolodinlaw.com

Chris Viskovic (ASB#        )
3443 North Central Ave, Suite 1009
Phoenix, Arizona   85012
Telephone:  (602) 730-2985
cviskovic@kolodinlaw.com

*Attorney for Cyber Ninjas Inc.*

By: _____



Exhibit B

# Ballots at Sky Harbor

 **Geisler, Roger**
To 'stacigriffinburk@yahoo.com'
Mar 30 at 3:43 PM


Mrs. Burk, I am in receipt of your information provided to the Arizona Attorney General's office about the Ballots at Sky Harbor Airport. I would like to meet with you at a time that is convenient to discuss your information. If you would like to discuss this further I am available anytime to talk about it. Below is my phone number and address. I have emailed you if you would like to send any information that would help me to investigate your information. My understanding is that a person admitted to you the transfer of ballots from Sky Harbor Airport to the Maricopa County Election Center.

Thank you and hope to hear from you soon.

**Roger Geisler**
Special Agent

 Office of the Attorney General
Special Investigations Section – Major Fraud
2005 N. Central Avenue, Phoenix, AZ 85004
Desk: 602.542.5835  Fax: 602.542.4882
www.azag.gov

## Re: Ballots at Sky Harbor



**Me**
To Geisler, Roger
Mar 30 at 4:00 PM



Hello Mr. Geisler,

Yes. Thank you for reaching out. I've been waiting to hear back from your office on this since November. I am happy to discuss it anytime.

I have been having some health issues lately, so we will need to work around that as I receive specialty care from UCLA and have been hospitalized out of State and am not currently in Arizona. I can still meet via phone or zoom if that works for you.

On that note, I now have a case at the United States Supreme Court because I could not get anyone to investigate this issue prior this contact from you.

For the sake of a beginning, it would help if you reviewed the documents I have filed in the Courts (including the Supreme Court petition for certiorari and my interview about these events with the Florence Police). The petition and audio recorded interview are on <u>Crime of the Century – Truth about 2020 –</u>

# RE: Ballots at Sky Harbor

 **Geisler, Roger**
To 'Staci Griffin-Burk'
Apr 6 at 9:44 AM



I would prefer to wait until you are better. I don't want to
jeopardize any treatment for you.

View more

## RE: Ballots at Sky Harbor

 **Geisler, Roger**
To 'Staci Griffin-Burk'
Apr 6 at 10:25 AM



If you think meeting at the hospital would not cause you any undue stress we can come there to meet with you anytime. Please let me know if a personal meeting with you will work. Thank you



## Fw: Ballots at Sky Harbor

 **Me**
To Roger Geisler
Apr 6 at 11:05 AM



In short what I am saying is, I don't think it will be any less stressful to meet with you a week or six months from now.

We might as well meet at the hospital where the necessary cardiac equipment is available should that stress cause further arrhythmias. Especially since my underlying heart condition will not improve anytime in the near future.

Sent from Yahoo Mail for iPhone

Begin forwarded message:

On Tuesday, April 6, 2021, 10:51 AM, Staci Griffin-Burk <stacigriffinburk@yahoo.com> wrote:

Exhibit C

# Re: Ballots at Sky Harbor

 **mark brno**
To Staci Griffin-Burk & 3 more
Today at 9:38 AM



Please direct official correspondence to
mark.Brnovich@azag.gov

Sent from my iPhone

> On Apr 22, 2021, at 8:31 AM, Staci Griffin-Burk
> <stacigriffinburk@yahoo.com> wrote:
>
> Hi Agent Geisler,
>
> I did not hear back from you regarding the meeting
> below. As I mentioned, we could meet at the hospital as
> I think we are pushing against the clock as far as
> evidence collection.
>
> It is my understanding that the Senate is conducting an
> audit and will be allowing citizen volunteers to handle
> the paper ballots.
>
> As you are aware, my allegation is that a man
> confessed that he and "his guys" removed illegal
> ballots from a plane and took them to the Maricopa
> County Election Center which eyewitnesses have also
> corroborated seeing him and his boss Shawn Wilson
> working behind the line during tabulation of ballots.



**Me**
stacigriffinburk@yahoo.com
Show less



To    mark.brnovich@azag.gov
        roger.geisler@azag.gov

CC    thebrno@gmail.com

Date  Today at 11:29 AM

To be clear, the crime of tampering and spoliation of evidence can be stopped by seeking an emergency injunction in Superior Court. You have the resources to do this.

Please take appropriate steps to protect election integrity. Agent Geisler has the audio recorded confession and the witness affidavits as they were provided last month in a link. I am also willing to provide a transcript and my own affidavit if necessary.

Thank you in advance for your assistance.


Sent from Yahoo Mail for iPhone


Begin forwarded message:

On Thursday, April 22, 2021, 11:01 AM, Staci Griffin-Burk <stacigriffinburk@yahoo.com> wrote:


View more

Exhibit D

SB: Staci Burk
SK: Scott Koch
ST: Somer Tolley

**Partial Excerpt of Conversation recorded on November 16, 2020 at approximately 9pm**

SB: Loaded stuff on the plane. 'Cause Josh has video of it.

SK: He's got video of someone loaded on that plane? I'd love to see that. Be cause I know two agents that are standing there.

SB: Who are standing where?

SK: At the plane. When it's in Phoenix.

SB: The 8230?

SK: Yes. Those are my guys standing there.

ST: So if these guys are helping it he needs to know.

SB: Sheesh. Uh...

ST: This just got deep.

SB: But is Josh just makin' up a story? I mean that's 'cause he's got video. He sent me...

ST: Do you remember what I said about Marco?

SB: He sent me- no but he sent me some video.

SK: Okay.

SK: I would love to see video of somebody loading stuff on that plane. If they can produce one.

SB: Well he...

SK: I seriously doubt he can.

SB: He says he has it.

SK: Who?

SB: Josh Barnett. He s- he says he has it.

ST: You think he'll send it to you?

SB: I mean 'cause I'm thinking of - what he did send me and it doesn't show the loading of something
on the plane.

SK: I put that Corvette on it nobody had loaded anything on that plane.

SB: What Corvette? Like that...

SK: The one sitting out there..

SB: Oh that little-that's like a little...

SK: No. My Corvette.

SB: Oh, your Corvette.

SK: I know nobody put anything on that plane. There were things unloaded from the plane. But nothing loaded.

SB: What was unloaded from it?

SK: Ballots were unloaded.

SB: Okay.

SK: And they were shipped through UPS and FedEx here.

SB: To somewhere else?

SK: Las Vegas.

SB: I thought some of 'em went to the Maricopa County elections?

SK: Some of 'em did. Most of 'em went to Las Vegas.

SB: Okay. And so Jerry...

V2: (Inaudible).

SB: So Jerry Moyer that gave the tip, right?

SK: I don't know that guy.

SB: He owns the i- Swift Aviation.

SK: Mmm

SB: How would you not know him if...

SK: I've- Swift Aviation doesn't really mean anything to me.

SB: That's where the plane was.

SK: The plane was by Swift. No. Swift Aviation sits here...

SB: Mm-hmm.

SK: Okay? The plane is sittin' here.

SB: Mm-hmm.

SK: But it's not technically at Swift. It has nothin' to do with Swift. They may have seen the plane. They may be involved with the plane. But the plane is in the care of- the care of the National Guard.

ST: So what about the 200 grand that he got dropped in from Korean Airlines?

SK: My guess is he's full of shit.

SK: I don't trust the man.

SB: Because...our government agency, we don't need to pay anybody. National Guard has custody of the plane. The National Guard will have custody of the plane between Oregon and Washington. All three of them.

ST: Can I ask you one question since now that you know about...

SB: So why are they jerkin' me around? Why are they tellin' me all this stuff and...

SK: A lotta these people want be the center. They wanna have information. The problem is, the information they don't want.

SB: Gotcha.

SK: ...the information they wanna have is dangerous as hell.

SB: Yeah. I mean i- I think I think Marco realizes that 'cause he's runnin' around video recording th- all this

SK: Marco I don't know Marco but I know who Marco is. Because Marco is on our radar just like everybody else.

ST: As a good guy or a bad guy?

SK: As somebody to watch.

ST: Okay but like somebody to watch like he's done things to make- because listen…

SB: Well if..

SK: He- he gets involved in things that he shouldn't be involved in.

ST: Okay.

SB: Like the three per…like an- anybody in the three percenters are in the groups are on the watchlist? Or no?

SK: No. There's certain people in the three percenters that are on our watchlist. They… we are watching them because they are bad people.

SB: Gotcha.

SK: They- they are they are not who they say they are. They have no interest in helping the three percenters. They don't have the same values as the…

SB: So the..

SK: …they are not,

SB: The three percenters are a good group.

SK: Overall.

ST: But Marco's not one…of those guys that you're sayin'…

SK: No.

ST: …that he's just on a watch.

SB: He's not a bad guy.

SK: If Marco gets close enough, they will shut him down. They- they have to make it look like he did something illegal. If they put him in prison. If they have to- make him have a car accident.

SB: I mean that's always been the, the shadow government does that. You know, like, yeah.

ST: So, Biden has to get into office. Then- then the vaccine?

SB: So why is Biden? So they're controlling it.. it's the new world order. It's like they're getting Biden...

SK: They are going to..

SB: So...there's nothing...so what if? So wh.. So did wh- who- how..  Did?

SB: So the ballots did jade the election in favor of Biden?

SK: Yes.

SK: In the legitimate election Trump won by a landslide.

SB: Sh- we.. you could tell by how many people show up at Trump ra...

SK: Even California.

SB: Nuh-uh.

SK: He seriously won.

ST: I think California has always been a Republican, but because of the deep state...

SB: Wow.

SK: If you notice, there's another thing- another thing that just happened that everybody's neglecting to see. It's not about the election.

END OF RECORDING

DMB 12/10/2020